IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

JEREMY MEYERS, individually, and
on behalf of all other similarly situated,

                      Plaintiffs,

vs.                                                   Case No.: 15-CV-444

NICOLET RESTAURANT OF DE
PERE, LLC, a Wisconsin limited
liability company,

                      Defendant.

---

**DEFENDANT NICOLET RESTAURANT OF DE PERE, LLC's MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

NOW COMES defendant Nicolet Restaurant of De Pere, LLC ("Nicolet"), by its attorneys, Nash, Spindler, Grimstad & McCracken LLP, and hereby provides the following in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

Plaintiff Jeremy Meyers'[1] class-action complaint seeks to exploit the confusion that still exists regarding the truncation requirement of the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit and Reporting Act ("FCRA"). Plaintiff seeks potentially many millions of dollars in damages, attorney's fees and litigation costs against Nicolet Restaurant, a small locally-owned diner in De Pere, WI, because Nicolet gave plaintiff a receipt that displayed the credit card's expiration date which resulted in no actual harm to plaintiff. If the Court allows this case to proceed and the jury awards even a portion of the damages the plaintiff

---

[1] For the rest of the memorandum, plaintiff Jeremy Meyers and all proposed class members will be referred collectively as "plaintiff."

requests, it will bankrupt Nicolet and force it to close its doors and lay off its employees all because of a technical violation of the FACTA law which did not result in any harm.

Because the plaintiff requests only statutory damages in this case, he must prove that Nicolet willfully violated FACTA to prevail. If Nicolet only negligently violated FACTA, the plaintiff cannot prevail. There are no disputed issues of fact that plaintiff cannot meet his burden to prove that Nicolet willfully violated FACTA and, as such, Nicolet is entitled to summary judgment dismissing the plaintiff's complaint, on the merits and with prejudice. Alternatively, Nicolet is entitled to partial summary judgment dismissing all the plaintiff's claims arising out of receipts generated before April 14, 2013 because those claims are barred by the two year statute of limitations in 15 U.S.C. § 1681p.

## FACTS

Nicolet owns and operates Nicolet Restaurant, located at 525 Reed Street, De Pere, WI 54115. (PUF 1.) Nicolet Restaurant is a small family diner that employs approximately 30 to 32 people as cooks and wait staff. (PUF 2.) Nicolet began owning and operating Nicolet Restaurant on August 26, 2012. (PUF 3.) Nicolet does not own the building it is in but leases it from a third party. (PUF 4.) Nicolet is owned by Robert Crowley; however, daily operations are handled by two managers: Keith Noskowiak and Joseph Emerich. (PUF 5.)

Nicolet's Point of Sale System automatically prints a merchant receipt and a customer receipt for all credit and debit card transactions. (PUF 6.) Nicolet's customers that pay with credit or debit cards do not automatically receive a copy of their receipt, instead each customer is asked if he/she wants a copy of their receipt. (PUF 7.) Most customers do not want a copy of their receipt. The customer receipts that are not taken by the customer are destroyed by Nicolet. (PUF 8.)

On February 10, 2015, the plaintiff, Jeremy Meyers, visited Nicolet Restaurant where he was provided a receipt which displayed the credit card's expiration date. (PUF 9.) The receipt properly truncated all but the last four digits of his card number. (PUF 10.) Prior to and since that date, no person other than Mr. Meyers indicated that he or she received a receipt from Nicolet that displayed the card's expiration date. (PUF 11.) In addition, no individual, other than Mr. Meyers, has either notified Nicolet or asserted a claim against Nicolet because their receipt displayed the expiration date. (PUF 12.) Prior to being served the summons and complaint in this action, Nicolet was unaware that FACTA required omission of the expiration date on each customer credit card receipt. (PUF 13.)

Plaintiff has not sustained any actual damages as a result of Nicolet's actions or inactions. (PUF 14.) Despite receiving a receipt from Nicolet that contained his card's expiration date, Mr. Meyers took no action to ensure that his account information was not compromised, such as changing his credit card number or even acquiring a credit report to determine whether he was the victim of identity theft. (PUF 15.) Because the plaintiff sustained no actual damage and no actual damage has been asserted by any proposed class member, the plaintiff requested statutory damages in the range of $100 to $1,000 per FACTA violation. (PUF 16.)

The plaintiff's complaint alleges that Nicolet "negligently, recklessly and/or willfully disregarded FACTA." (PUF 17.) At his deposition, Mr. Meyers testified that he believes Nicolet willfully violated FACTA because credit card companies give regulation guides to their merchants. (PUF 18.) However, Mr. Meyers has no knowledge of what regulation guides were sent to or received by Nicolet. (PUF 19.) The plaintiff offers no facts which prove that Nicolet violated FACTA recklessly or willfully.

On or around August 14, 2012, Nicolet entered into a Merchant Processing Agreement

with Heartland Payment Systems ("Heartland") which allowed Heartland to process Nicolet's credit and debit card transactions. (PUF 20.) Included in the agreement is a brief section that Nicolet agreed to truncate all but the last four digits of the credit card number and omit the expiration date on receipts. (PUF 21.) The agreement does not mention FACTA or otherwise put Nicolet on notice that there is a federal law that requires truncation of any portion of the credit card number or expiration date on credit card receipts.

Heartland also provided Nicolet with monthly statements to advise the number and value of credit card and debit card transactions that Heartland processed for Nicolet the previous month. (PUF 22.) On the last page of these statements, Heartland provided customers, like Nicolet, "Hints and Tips." In December of 2012 and January, February, March, April, May, June and July of 2013, the "Hint and Tip" was that MasterCard now requires omission of the expiration date from the customer copy of the receipt and the merchant copy of the receipt. (PUF 23.) Never once did Heartland provide Nicolet notice of FACTA in any of its monthly statements.

In response to subpoenas from the plaintiff, Visa and MasterCard produced their rules and operating regulations that would have been in effect when Nicolet accepted these credit cards. (PUF 24.) While these rules and operating regulations are many thousands of pages, there is not even one mention of FACTA or a general statement that a federal law requires the truncation of information on credit card receipts. (PUF 25.) Additionally, there is no evidence in this case that these rules and operating regulations were sent to Nicolet; instead, these rules and operating regulation were available online. (PUF 26.) The plaintiff also subpoenaed information from Discover and American Express. (PUF 27.) American Express declined to respond and Discover notified the plaintiff that Nicolet does not have a direct relationship with Discover, but rather has a relationship with a Heartland. (PUF 28.) As a result, Discover never sent Nicolet anything.

4

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Filipovic v. K & R Exp. Systems, Inc., 176 F.3d 390, 395 (7th. Cir. 1999). "As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1103 (7th. Cir. 2008).

Once a party has made a properly supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Harney, 526 F.3d at 1104. The United States Supreme Court has held:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

## ARGUMENT

### I. The Plaintiff Cannot Meet His Burden to Prove That Nicolet Willfully Violated FACTA.

In 2003, Congress enacted FACTA in an effort to combat identity theft. See Pub. L. No. 108-159, 117 Stat. 1952. Relevant to this case, FACTA included a new truncation requirement limiting the account information that should be reproduced on receipts for credit and debit card transactions. 15 U.S.C. § 1681c(g). The applicable statute provides:

> no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction. 15 U.S.C. § 1681c(g)(1).

The flurry of lawsuits caused by FACTA's truncation requirement prompted Congress to enact the Credit and Debit Card Receipt Clarification Act of 2007 to address some of the confusion surrounding the truncation of expiration dates. Congress found that there was a wide-spread misunderstanding of FACTA as "[m]any merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law." Pub. L. 110–241, § 2(a)(3). Many merchants, like Nicolet, complied only partly with FACTA by properly truncating the account number but not the expiration date. See e.g., Gardner v. Appleton Baseball Club, Inc., 2010 WL 1368663, at *6 (E.D. Wis. 2010) ("the fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA . . .")

FACTA allows a consumer who is provided a computer generated receipt that violates the law's truncation requirements to sue the merchant that provided them the receipt for either actual damages if they sustain actual harm or statutory damages if they sustain no harm. A plaintiff seeking statutory damages must prove that the merchant willfully violated FACTA and, if they do,

can be awarded not less than $100 and not more than $1000 per violation, costs of litigation, attorney fees, and punitive damages. 15 U.S.C. § 1681n. Consumers who sustain actual harm need only prove that the merchant negligently violated FACTA to prevail.

Plaintiff here alleges that Nicolet willfully violated FACTA which was a tactical decision because the plaintiff sustained no actual damage as a result of Nicolet's actions or inactions, so he must allege and prove that Nicolet willfully violated FACTA to prevail and recover damages. Fortunately for Nicolet, plaintiff cannot meet his burden that Nicolet willfully violated FACTA and so his complaint should be dismissed. At worst, Nicolet negligently violated FACTA which is insufficient for statutory damages.

Willfulness under FACTA requires knowledge or a reckless disregard of the statute's requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007). In the present case, Mr. Noskowiak testified that no one at Nicolet Restaurant had knowledge of FACTA's truncation requirements until served with this lawsuit and plaintiff has no evidence to the contrary. (PUF 13.) There is no dispute that Nicolet did not knowingly disregard the statute; therefore, the plaintiff must prove that Nicolet recklessly disregarded the statute to prevail.

A defendant recklessly disregards FACTA when the action is a violation under a reasonable reading of the statute and the defendant ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. Safeco, 551 U.S. at 69. The Seventh Circuit further defined recklessness as engaging in conduct that creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Redman v. RadioShack Corp., 768 F.3d 622, 627 (7th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

The evidence in this case is insufficient to prove that Nicolet acted in reckless disregard of FACTA's truncation requirements. The plaintiff has no evidence that any third party advised

Nicolet of FACTA. Plaintiff subpoenaed many thousands of pages of documents from Nicolet's credit card processor Heartland and from credit card companies, like Visa, Mastercard, etc. Importantly absent from these many thousands of pages is any notice about FACTA or even a general statement that a federal law requires the truncation of information on credit or debit card receipts. While some of these documents do reference the truncation of expiration dates, as will be explained below, these references are not relevant to the issue of Nicolet's knowledge of FACTA. At most these references speak to Nicolet's knowledge of what its credit card processor and the credit card companies required which in most cases is more restrictive than what FACTA requires. This does not establish or even tend to prove Nicolet's recklessness regarding FACTA. The documents that Nicolet believes plaintiff will use to try and establish recklessness are addressed separately below.

Nicolet's Contract With Heartland

Nicolet's contract with Heartland does not reference FACTA or its requirements. The contract does state that receipts "shall not contain the expiration date and no more than the last four digits of the credit card number." (PUF 21.) However, these are Heartland's terms because FACTA allows a merchant to display the last five digits of the credit card. The Heartland contract does not reference FACTA or direct the merchant to the relevance, importance or potential ramifications of either FACTA law or failure to truncate the expiration date. For these reasons, the Heartland contract is not relevant to the issues in this case. At most, the plaintiff may be able to prove that Nicolet breached the contract with Heartland by providing the plaintiff that displayed the card's expiration date. What Heartland requires of its merchants is not relevant in a case filed by a third party who is not even a party to the contract. If the contract referenced FACTA or its requirements, it may be relevant to establish Nicolet's culpability in this case. Without such

information, the contract is irrelevant to the issues in this case.

### Heartland's Merchant Statements

Heartland's merchant statements contain no mention of FACTA. Heartland sent Nicolet monthly statements showing the number and amount of all credit and debit card transactions. (PUF 22.) Nicolet uses the statements only to cross reference its own internal sales records to make sure that Heartland is not over or under paying them for credit card transactions. On the last page of these merchant statements, Heartland provides "Hints & Tips" which either acts as a warning for various conduct to be aware of or as a sales pitch to contact a sales representative for new products and/or upgrades to current processing systems. On more than one occasion, Heartland advised its customers that since December 31, 2010, MasterCard requires that both the merchant receipt and the customer receipt omit all but the last four digits of the card number and the expiration date. As with Heartland's merchant contract, there is no reference to FACTA and MasterCard's rules are even more restrictive than FACTA. FACTA only applies to customer receipts, not merchant receipts, and allows the customer receipt to display the last five digits of the credit card number. That Nicolet did not comply with MasterCard's rules does not establish that it recklessly violated FACTA. Like the Heartland contact, these merchant statements are not admissible because they are not relevant to Nicolet's knowledge of FACTA.

### Thousands Of Pages Of Credit Card Policies And Procedures

Finally, the plaintiff subpoenaed and received the operating policies and procedures from Visa and MasterCard. (PUF 24.) Foremost, the plaintiff has not established that any of these thousands of pages were received by Nicolet. Neither Heartland nor the credit card issuers themselves ever sent Nicolet the policies and procedures. Instead, the policies and procedures are available online. (PUF 26.) Most importantly, FACTA is not referenced in any of the many

thousands of pages. However, there are some isolated references to Visa and MasterCard rules requiring truncation. (PUF 25.) For example, on page 359 of the <u>Visa Core Rules and Visa Product and Service Rules</u> released in April of 2015: "In the US Region, for Acceptance Devices installed after 1 July 2003, the expiration date must not appear or must be disguised or suppressed on the Cardholder's Transaction Receipt." Likewise, the following sentence can be found on page 84 of MasterCard's <u>Transaction Processing Rules</u> released in June of 2015: "A Transaction receipt generated by an electronic Terminal, whether attended or unattended, must not include the Card expiration date."

The plaintiff also subpoenaed operating policies and procedures from American Express and Discover; however, American Express declined to respond to the subpoena and Discover responded indicating that it does not have a direct relationship with Nicolet so it has never sent them anything. (PUF 27.)

The credit card companies, like Heartland, did not direct Nicolet to the relevance, importance or potential ramifications of either FACTA law or failure to properly truncate receipts. Instead, the credit card companies' policies and procedures are a compilation of expectations and not a recitation of federal law. Nicolet is not being sued by Visa or MasterCard for breach of contract or failure to abide by their rules and regulations. As with other documents in this case, the policies and procedures are not relevant to Nicolet's knowledge of FACTA, so these documents are not admissible. If this court were to conclude that these few sentences by the credit card companies buried in thousands of pages of irrelevant information constitute notice which supports a finding of recklessness, then every entity that provides a receipt with an expiration date would be reckless as a matter of law. This strict liability is not anticipated by FACTA.

The plaintiff's evidence in this case fails to establish that Nicolet's actions carried with

10

Case 1:15-cv-00444-WCG    Filed 02/22/16    Page 10 of 15    Document 44

them an unjustifiably high risk of harm that was known or should have been known by Nicolet. This Court in Gardner granted the defendant's 12(b)(6) motion dismissing the plaintiff's FACTA complaint because there was not enough evidence to support a finding of recklessness. While the procedural posture of the two cases are different, this Court's interpretation and understanding of FACTA law is persuasive in this case. This Court in Gardner said:

> It is just as reasonable to infer that a company could print an expiration date on a credit card receipt negligently rather than willfully. Indeed, it is far more likely that the violation was merely negligent, if even that. The fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA, and given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action entailed an unjustifiably high risk of harm that is either known or so obvious that it should be known. Gardner, 2010 WL 1368663, at *6. (internal citations omitted.)

Just as the defendant in Gardner, Nicolet properly truncated the account number and because no additional protection to the plaintiff is achieved by deleting the expiration date, Nicolet's actions did not create such a high risk of harm that was either known or should have been known. This is especially true since Nicolet is a small local restaurant with even fewer resources then the baseball team in the Gardner case. Nicolet had to rely on others to provide it information about federal and state laws regarding its processing and acceptance of credit and debit cards. The record in this case is clear that none of these third parties, including major credit card companies and Heartland, advised Nicolet of FACTA

No doubt the plaintiff will cite FACTA case law where courts have denied a defendant's motion for summary judgment, but those cases are distinguishable from the present case because in those cases there was evidence that tended to prove that the defendant was provided actual or constructive notice of FACTA. For example, in Armes, the defendant:

> (1) received at least two notices from Paymentech stating that

federal law and Visa and MasterCard rules required point-of-sale terminals to minimize fraud by printing only the last four digits of the account number on receipts, (2) received a Paymentech notice stating that in 2005 Visa and MasterCard would require suppression of all but the last four digits of the card number on a receipt, (3) received an "urgent" letter from Paymentech about state legislation and Visa and MasterCard requirements of card number truncation, and (4) received the *Inn Touch Magazine* that discussed truncation. In addition, Sogro received (5) a notice in or around February 2008 discussing the equipment upgrade mandated by federal truncation legislation, and (6) the 2005 *Inn Touch Guide* discussing truncation. Armes v. Sogro, Inc., 932 F. Supp. 2d at 939 (emphasis added).

The court in Armes concluded that the plaintiff presented enough evidence "to support a reasonable inference" of notice. Id. Moreover, the court found that a reasonable jury may find this evidence together constituted reckless behavior on the part of the defendant. Unlike the defendant in Armes, Nicolet did not receive a single notice that federal law required the truncation of expiration dates on credit cards that it simply failed to give attention. Instead, all Nicolet received was notice that their credit card processor and credit card companies required them to truncate the expiration date. This is very different than being provided notice about FACTA. Perhaps even more important was that the receipt in Armes displayed the entire credit card number creating a greater danger for identity theft than the receipt here which properly truncated the credit card number but not the expiration date.

Another district court in the Seventh Circuit denied a defendant's motion for summary judgment because there was evidence that tended to prove that the defendant was provided notice of FACTA:

> Plaintiff has presented evidence in the form of deposition testimony and business records sufficient to support a reasonable inference that Defendant received notice of FACTA's truncation requirements both in its monthly billing statement and via phone calls from National Translink employees . . . [Employees of Translink] explained in detail the methods they used to notify hundreds of

> National Translink's clients of the need to truncate credit card receipts, and their documentation and contemporaneous handwritten notes of this process support the inference that National Translink did in fact contact Bacci regarding the new truncation requirements. Shurland v. Bacci Cafe & Pizzeria on Ogden Inc., 259 F.R.D. 151, 157 (N.D. Ill. 2009).

The evidence in this case is undisputed that Nicolet neither knew nor should it have known about FACTA and its actions did not create an unjustifiably high risk of harm. Nobody provided Nicolet notice of FACTA. Further, Nicolet properly truncated the plaintiff's credit card number but not the expiration date. As this Court recognized in Gardner, truncating the expiration date does not offer the consumer any greater level of protection so it cannot be said that Nicolet's actions created an unjustifiably high risk of harm supporting a finding of recklessness. This is self-evident because the plaintiff sustained no actual damages.

## II. Claims Arising Out of Receipts Generated Before April 14, 2013 Are Barred By The Statute Of Limitations.

In the present case, the plaintiff seeks certification of a class defined as:

> All persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at the Nicolet Restaurant after June 3, 2008, which receipt displays the expiration date of the person's credit card or debit card. Excluded from the Class are Defendant, and its respective officers, employees, and attorneys. (Compl. ¶ 13.)

Nicolet began operating Nicolet Restaurant on August 26, 2012. (PUF 3.) As such, any alleged violation which predates this date cannot be brought against Nicolet. In addition, the statute of limitations applicable to FACTA violations is either two years from the discovery of the alleged violation or five years after the date of the violation (whichever period expires earlier). 15 U.S.C. § 1681p. The plaintiff's complaint was filed on April 14, 2015.

The two-year statute of limitation begins to run "when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation."

13

Mack v. Equable Ascent Financial, L.L.C., 748 F.3d 663, 665-66 (Tex. 2014) (citing Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 644–48 (2010). The Court in Mack held that the two-year statute of limitation began to run when the plaintiff discovered that his credit report had been obtained without his consent, not when plaintiff became aware that this constituted a legal violation. In a case where the defendant was not a credit reporting agency but rather the requester and recipient of a credit report, the Court determined that the two-year statute of limitation began on the date that credit report was received by the defendant. Edgar v. Reich, 881 F. Supp. 83 (D. Mass. 1995).

The two-year statute of limitations on the claims in this case started when each proposed class member was provided his or her receipt from Nicolet, because at that point he/she had all of the information and facts that gave rise to their claim. It is immaterial if the proposed class member did not know that the receipt they received did not comply with FACTA. As such, claims arising out of receipts generated before April 14, 2013, are barred by the statute of limitations.

## CONCLUSION

The plaintiff cannot meet his burden to prove that Nicolet knowingly, recklessly or willfully violated FACTA. Accordingly, Nicolet requests that this Court grant summary judgment in its favor and dismiss the plaintiff's complaint on the merits with prejudice. In the alternative, Nicolet requests that this Court grant partial summary judgment barring any claims arising out of receipts generated before April 14, 2013.

Dated this 22nd day of February, 2016.

    NASH, SPINDLER, GRIMSTAD & McCRACKEN LLP

    */s/ Ryan R. Graff*
    _____
    Ryan R. Graff
    State Bar No. 1051307
    Nicole R. Radler
    State Bar No. 1099842
    Attorneys for Defendant Nicolet Restaurant of De Pere, LLC

<u>Mailing Address:</u>
1425 Memorial Drive
Manitowoc, WI 54220
(920) 684-3321