IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **JEREMY MEYERS**, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 15 cv 444 ) |
| **NICOLET RESTAURANT OF DE PERE, LLC,** a Wisconsin limited liability company, | ) ) ) ) ) |
| Defendants. | ) |

### PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff Jeremy Meyers ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through his counsel, and in response to Defendant's Motion for Summary Judgment, states:

### I. INTRODUCTION

On February 10, 2015, after paying for his meal with a credit card at Nicolet Restaurant of De Pere ("Defendant" or "Nicolet"), Plaintiff received from Defendant a computer-generated cash register receipt which displayed the last four digits of his credit card number as well as the card's expiration date — a clear violation of the Fair and Accurate Credit Transactions Act ("FACTA" or "Act") truncation requirements. Defendant claims that since Plaintiff only requests statutory damages, he must prove Nicolet willfully violated FACTA to prevail. However, Defendant also incorrectly argues that there are no disputed issues of fact to prove that Defendant willfully violated FACTA. Despite Defendant's claims that it was not aware of FACTA truncation requirements, the facts discovered in this case show that, at the very least, Defendant recklessly disregarded its obligation to comply with FACTA when it provided its

customers with credit and debit card receipts that included the card expiration date, and therefore, under the law, Defendant willfully violated the Act. Alternatively, since there are numerous disputed issues of fact, summary judgment in favor of Defendant would not be appropriate.

## II. LEGAL STANDARD

Summary judgment can only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). A genuine issue of fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Miller v. Am. Airlines, Inc.*, 2007 WL 489147, at *1 (N.D. Ill. Feb. 6. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To defeat summary judgment, the non-moving party need only present *some* evidence that shows there is any genuinely disputed issue of material fact. *Miller*, 2007 WL 489147, at *2.

In ruling on a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). The Court may not weigh the evidence or decide which testimony is more credible. *Anderson*, 477 U.S. at 255. The Court must "avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## III. ARGUMENT

### A. FACTA

In order to curb identity theft, Congress enacted the December 2003 Fair and Accurate

Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), which provides that:

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

15 U.S.C. § 1681c(g)(1).

"The plain language of the statute has only one reasonable meaning: It 'unambiguously prohibits a person from printing more than the last five digits of a credit card on a receipt and from printing the expiration date on a receipt.'" *Kubas v. Standard Parking Corp. IL*, 594 F.Supp.2d 1029, 1032 (N.D. Ill. 2009) (quoting *Troy v. Home Run Inn, Inc.*, 2008 WL 1766526, at *3 (N.D. Ill. 2008)). FACTA required full compliance with its provisions no later than December 4, 2006 – three years after the law was enacted – for all machines in use and for all transactions. 15 U.S.C. §1681c(g)(3)(A).

For a willful violation of FACTA, a plaintiff is entitled to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," plus costs of suit, reasonable attorney's fees, and punitive damages. 15 U.S.C. § 1681n(a)(1)(A), (a)(2), (a)(3).

In 2007, the Supreme Court interpreted the "willfulness" provision of section 1681n of the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). In *Safeco*, the Supreme Court held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id*. at 57.

The Court defined recklessness as generally understood in the common law: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Put another way, a

3

company subject to the FCRA (including FACTA) acts in reckless disregard of the law if "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

To prove willfulness, Plaintiff does *not* need to show that a defendant acted with scienter, evil motive, or malice. *See Edwards v. Toys 'R' Us*, 527 F.Supp. 1197, 1212 n.47 (C.D. Cal. 2007); *Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir. 1993); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987).

The Seventh Circuit Court of Appeals is clear that willfulness does not require Defendant to know that a law named "FACTA" exists, or for Defendant to be familiar with FACTA's specific requirements. *See Murray v. New Cingular Wireless Svcs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008) (holding that "willfulness" under FACTA requires "something more than negligence **_but less than knowledge of the law's requirements._**") (emphasis added). Therefore, even if a defendant does not have specific knowledge of FACTA's requirements, its FACTA violation would still be "willful" if the defendant's actions are reckless. Because willfulness encompasses reckless conduct, this prevents a defendant from simply turning a blind eye to the law in an effort to avoid liability for a willful FACTA violation. See, *J.I. Case Credit Corp. v. First Nat. Bank of Madison Cty.,* 991 F.2d 1272, 1278 (7th Cir. 1993) ("To consciously ignore or to deliberately close one's eyes to a manifest danger is recklessness, a mental state that the law commonly substitutes for intent or actual knowledge").

More recently, when deciding cross-motions for summary judgment, the district court found that actual knowledge of FACTA or the credit card truncation requirements is not required for a plaintiff to establish willfulness; recklessness is the standard. *Armes v. Sogro, Inc.*, 932 F.Supp.2d 931, 939 (E.D.Wis. 2013). Moreover, willfulness might be inferred from a

4

merchant's "cavalier attitude towards credit card privacy or toward regulatory compliance in general." *Id.* at 940 (quoting *Gardner v. Appleton Baseball Club, Inc.*, No. 09-C705, 2010 WL 1368663 at * 6 (E.D.Wis. Mar. 31, 2010).

Several federal courts outside the Seventh Circuit have also held that FCRA violations were committed "willfully," even when defendants were ignorant of the law. *See Saenz v. Trans Union, LLC*, 621 F.Supp.2d 1074, 1087 (D. Or. 2007) ("[N]either a deliberate failure to determine the extent of its obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily be sufficient to avoid a conclusion that a company acted with willful disregard of FCRA's requirement."); *Apodaca v. Discover Financial Services*, 417 F.Supp.2d 1220, 1229 (D.N.M. 2006) ("[R]equiring FCRA plaintiffs to prove the defendant actually knew that it was violating the law would 'create perverse incentives' for credit reporting agencies to pursue a policy of deliberate ignorance of the law in order to avoid liability for punitive damages." (internal citations omitted)); *Mathews v. Gov't Employees Ins. Co.*, 23 F.Supp.2d 1160, 1164 (S.D. Cal. 1998) ("Congress did not intend to enable mass-users of credit reports to evade meaningful liability for repeated violations of their 'grave responsibilities' under the FCRA by sticking their heads in the sand and pleading ignorance of the law.").

### B. Defendant's Willfulness

Defendant does not argue that it attempted to comply with FACTA, but only that no one at Nicolet Restaurant had knowledge of FACTA's truncation requirements until served with the lawsuit. (PUF 13).[1] This claim is based solely on the testimony of Defendant's manager Keith Noskowiak, who has been in the restaurant business for over 26 years, including as an owner who has been accepting credit cards at the businesses he either owned or managed since 1998 —

---

[1] References to paragraphs from Defendant's Statement of Proposed Undisputed Facts are designated as "PUF", and paragraphs from Plaintiff's Statement of Additional Facts are designated as "SAF".

5

before FACTA was enacted in 2003, became effective in 2006, and clarified by the Clarification Act in 2007. (SAF 3, 4, 5, 6; 15 U.S.C. §§ 1681c(g)(3), 1681n(d)).

Although Defendant claims that no one at Nicolet had knowledge of the FACTA law and its requirements, it also states in its introductory paragraph to its Motion for Summary Judgment that Plaintiff's complaint seeks to exploit the confusion that still exists regarding the truncation requirement of FACTA. Defendant cannot claim that it had no knowledge of FACTA requirements and then argue that there is confusion concerning truncation requirements about which it claims to have no knowledge. The facts in this case support Plaintiff's claims that Defendant willfully violated FACTA by recklessly disregarding the law and taking a cavalier attitude toward regulatory compliance — an attitude which still exists today.

On or about August 26, 2012, Nicolet, under new ownership, began operating. (PUF 3, SAF 17). On or about August 14, 2012, the sole principal of Defendant, Robert Crowley negotiated, reviewed and executed the Application and Agreement with Heartland Payment Systems ("Heartland") to process credit and debit cards used by Nicolet's customers. (SAF 18, 19, 20). Included and made part of the Application and Agreement with Heartland was the incorporation of the terms of the Merchant Processing Agreement Terms and Conditions ("Merchant Processing Agreement") and the American Express Card Acceptance Agreement. (PUF 20, SAF 19, 20).

In Section 4.3, the Merchant Processing Agreement explicitly states that an electronically printed Sales draft or Credit Voucher provided to a customer should not contain the expiration date of the card, and should only display the last four digits of the customer's card number. (PUF 21). Defendant chose to ignore the contract terms setting forth what information should be displayed on its customers' credit and debit card receipts, and it began printing the

6

card expiration date on the customer receipts when it opened for business in August 2012. (SAF 13

In addition to that section, under the contractual subcategory "Rights, Duties, and Responsibilities of Merchants" found in the Merchant Processing Agreement, Section 4.40 states that Merchants shall not only comply with the rules and operating regulations of the Card Schemes and American Express, **but with "all applicable federal, state, and local, Rules and regulations." (*Id*.)** (emphasis added). Section 5.12 of the Merchant Processing Agreement, also states that Debit Transactions are governed by network regulations as well as federal and state laws and regulations, and states that the Merchant shall comply with all applicable federal, state and local laws and regulations. (SAF 16).

Although the Merchant Processing Agreement does not explicitly use the terms "Fair and Accurate Credit Transactions Act" or "FACTA," it clearly states that it is the duty and responsibility of Merchants to be apprised of federal, state and local laws as well as Rules and regulations relating to the acceptance of credit and debit cards as part of their business practices.

Robert Crowley, the new owner of Nicolet, was put on explicit notice of how his customers' credit and debit card receipts should appear with the language stated in section 4.3 of the Merchant Processing Agreement. (PUF 21). As a Merchant and business owner, it was his duty to comply with all laws that govern his chosen method of collecting payment from his customers, just as a reasonable person would expect him to be aware of laws that govern health and safety standards or labor and employment related matters.

In addition, the American Express Card Acceptance Agreement, attached to the Application and Agreement with Heartland signed by Robert Crowley, provides that as a condition of Defendant being able to accept American Express card payments from its

7

customers, Defendant not only agreed to be bound by the American Express Merchant Regulations, but it advised Defendant how it could obtain copies of the Merchant Regulations — either on its website, by a paper copy or on a CD-ROM — to be certain that it had the complete terms of the agreement and was apprised of any changes made to the agreement. (SAF 21).

The American Express Merchant Regulation – October 2014, that was made available to Defendant on the American Express Website, states the following:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of the Charge Records delivered to Cardmembers. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers. Here is an example of a Charge Record with a truncated Card Number."



(SAF 23).

Visa, another Card Scheme that Defendant has been doing business with since 2012, also made available its operating regulations on line to advise Defendant of its contractual and legal duties regarding truncation of customer credit and debit card information, and the display of card expiration dates. The *Card Acceptance Guidelines for Visa Merchants – 2015*, produced by Visa in response to Plaintiff's subpoena, states:

**Suppressed Account Number and Expiration Date**

**Ensure that the Visa account number is suppressed in accordance with Visa Rules and local laws and regulations**. Effective 1 October 2014, Visa requires the account number be partly suppressed on the receipt; however, rules will vary by region.

The expiration date should not appear at all on the cardholder copy of the transaction receipt. Existing point-of-sale terminals must comply with these requirements. To ensure that your point-of-sale terminals are properly set up for account number and expiration date suppression, contact your acquirer.

(SAF 24)

Again, as a business that accepts credit and debit cards as a method of payment for its goods and services, a reasonable person would expect Defendant to take advantage of resources made available by the credit card companies with which it does business to keep apprised of its contractual duties that include complying with laws that are designed to protect its customers from identity theft.

Moreover, the business practices of Defendant do not support Defendant's claim of total ignorance of the FACTA requirements, but rather a cavalier attitude toward regulatory compliance. Defendant's printed customer receipts partially comply with FACTA because its customers' credit and debit card receipts display only the last four digits of the card numbers. (PUF 10, SAF 13). One would expect that if Defendant was unaware of FACTA as it claims, none of its customers' credit or debit card numbers would be truncated. Also, if Nicolet was unaware of the FACTA requirements, its reliance on the *Gardner* case is misplaced because the defendant in that case was aware of FACTA and attempted to comply with the statute. *Gardner*, 2010 WL 1368663 at *2.

At the end of each day, instead of just throwing out those credit and debit card receipts that its customers do not want, Defendant claims to set them aside and shred them — a practice, if consistently done, that may demonstrate an attempt at some consumer protection or concern

9

regarding the dissemination of its customers' private credit or debit card information.. (PUF 8, SAF 15). However, Defendant shredding its customers' receipts at the end of the day is no substitute for complying with FACTA. Printing receipts that fully complied with FACTA requirements would make the shredding of customer receipts every day unnecessary, and would eliminate the additional identity theft concern that customer receipts sitting in a box on the counter next to the cash register before being shredded would be accessible to other restaurant customers and restaurant staff.

Mr. Noskowiak also acknowledged that Defendant's Point of Sale ("POS") system which generates customer receipts is "outdated" and Defendant has been in the process of developing a new POS system with Heartland Payment Systems since April 2013. (SAF 10, 11, 12). The three years Defendant has taken to upgrade its outdated POS system further demonstrates Defendant's cavalier attitude about compliance and Defendant's recklessness.

Even today, and now admittedly being aware of the FACTA regulations, Defendant continues to print out customer receipts that display the credit and debit card expiration date, and hopes that whoever is working at the cash register remembers to manually black out this information before providing receipts to those customers who would like their copy. (SAF 13). Defendant claims to be a small family diner. Given the volume of business demonstrated by the estimated revenue of over $1 million for the past three years (SAF 1), and processing on average about 2,500 credit or debit card sales per month (SAF 2), Defendant's current attempt to comply with FACTA requirements could still be considered reckless by a reasonable person.

Defendant admits that it received merchant statements from Heartland Payment Systems beginning in December 2012, and for the following seven months, which explicitly stated that MasterCard required that the payment card expiration date be omitted from customer copies of

10

Case 1:15-cv-00444-WCG   Filed 03/23/16   Page 10 of 14   Document 45

printed receipts, and that only the last 4 digits of the card number show on the customer's copy of the receipt. (PUF 23). Defendant again chose to ignore these very specific instructions regarding what information should appear on its customers' card payment receipt, and claims that because Heartland's statements contained no reference to FACTA, but only to MasterCard rules, Defendant's failure to comply with the rules does not establish that it recklessly violated FACTA. According to Defendant, because Heartland or MasterCard did not mention the term "FACTA", it can claim ignorance of the law and be excused from compliance.

Defendant's pattern of repeatedly ignoring very explicit contractual requirements to omit its customers' credit and debit card expiration dates from the customers' receipts is much more than a breach of contract with Heartland and the payment card companies whose cards Defendant accepts. Defendant's failure to comply with FACTA requirements is also far more than negligence if Defendant is, at the very least, contractually obligated to keep apprised of the laws and regulations that govern the business practice of accepting credit and debit cards from its customers as payment. Defendant willfully or recklessly chose to ignore all of the contractual requirements and available resources that put it on notice of the law, and instead, claims that no one told it about a law called FACTA. Defendant is responsible for understanding and complying with FACTA requirements. Defendant's actions – or inaction – can easily be considered done in reckless disregard of FACTA requirements by a reasonable person, and therefore, willful under the interpretation of FACTA, making an award of statutory damages appropriate. At the very least, Plaintiff has shown that there are genuinely disputed issues of material facts and Defendant is not entitled to summary judgment as a matter of law.

11

### C. Defendant's Alternative Claim for Partial Summary Judgment

In the alternative, Defendant requests a partial summary that claims arising out of receipts generated before April 14, 2013, be barred by the two-year statute of limitations period applicable to FACTA. A person may bring a claim for a FACTA violation "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability. . ." 15 U.S.C. § 1681p(1). On February 10, 2015, Jeremy Meyers received a printed receipt from Defendant that displayed the expiration date of the credit card he used to pay for his meal at Nicolet. (PUF 9). On the date Plaintiff received the receipt from Defendant, Plaintiff was aware that Defendant had not complied with the law because the expiration date of his credit card was displayed on his receipt. (SAF 25). Plaintiff discovered that Defendant had violated FACTA on February 10, 2015. If the two-year statute of limitations period applicable to FACTA is applied, claims by customers receiving receipts generated after February 13, 2013 should be not be barred; not claims arising out of receipts generated after April 14, 2013, as Defendant argues.

### IV. CONCLUSION

Defendant's claim of ignorance of FACTA and its requirements is wholly insufficient for entry of summary judgment as a matter of law. The Court should deny Defendant's Motion for Summary Judgment. If the court decides to grant partial summary judgment in favor of Defendant and limit the class period, the appropriate starting date is February 10, 2013, and not April 14, 2013 as Defendant requests.

WHEREFORE, Plaintiff JEREMY MEYERS prays that the Court deny Defendant's Motion for Summary Judgment, and for any other relief the Court deems just under the circumstances.

Plaintiff JEREMY MEYERS, individually, and on behalf of all others similarly situated,

By:   <u>s/Thomas A. Zimmerman, Jr.</u>
     Thomas A. Zimmerman, Jr.
     Amelia S. Newton
     Jordan M. Rudnick
     Matthew C. De Re
     Nickolas J. Hagman
     Maebetty Kirby
     ZIMMERMAN LAW OFFICES, P.C.
     77 West Washington Street, Suite 1220
     Chicago, Illinois 60602
     (312) 440-0020 telephone
     (312) 440-4180 facsimile
     <u>www.attorneyzim.com</u>

Counsel for the Plaintiff and Class

**CERTIFICATE OF SERVICE**

      Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he caused the above and foregoing Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on March 23, 2016.

                                          s/ Thomas A. Zimmerman, Jr.
                                             Thomas A. Zimmerman, Jr.