UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEREMY MEYERS, individually and
on behalf of others similarly situated,

        Plaintiff,

    v.                                      Case No. 15-C-444

NICOLET RESTAURANT OF DE PERE,
LLC, a Wisconsin limited liability company,

        Defendant.

---

## ORDER DENYING MOTION TO CERTIFY CLASS AND DENYING MOTION TO COMPEL DISCOVERY

---

Plaintiff Jeremy Meyers alleges that Defendant Nicolet Restaurant of De Pere, LLC, violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), by negligently, recklessly and/or willfully printing the expiration date of the card number on receipts provided to debit card and credit card cardholders transacting business with Defendant. Before me is Plaintiff's motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) and his related requests that I appoint him as the Class Representative and appoint Ademi & O'Reilly LLP and Zimmerman Law Offices PC as class counsel. Additionally, Defendant has filed a motion to compel discovery pursuant to Federal Rules of Civil Procedure 26 and 34. For the reasons set forth below, Plaintiff's motion to certify class (ECF No. 3) and Defendant's motion to compel discovery (ECF No. 32) are denied.

## BACKGROUND

The relevant portion of the FACTA reads: "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. §1681c(g)(1). This poorly worded provision is intended to prohibit merchants from printing on a credit card customer's receipt either the expiration date of the card or more than the last 5 digits of the card number. It serves the laudable goal of "prevent[ing] criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Pub.L. No. 110–241, § 2(a)(1); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir.2009). The requirements of the law, however, go beyond what is needed to accomplish its goal. This is because leaving the expiration date on an otherwise truncated credit card receipt does not increase the risk of identity theft. Pub. L. No. 110-241 § 2(a)(6) ("Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.").

To enforce compliance with the law, Congress authorized any consumer to bring a civil action against a merchant who willfully fails to comply and recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 or more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). The consumer can also recover "such punitive damages as the court may allow" and "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C.

§ 1681n(a)(2) and (3). Willful, as used in the FCRA, includes "reckless disregard of a statutory duty." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007).

For machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. § l681c(g)(1) on or after December 4, 2006. Unfortunately, many merchants originally thought that FACTA only required truncating the account number down to the last five digits. This was in part due to the confusing language of the provision and the publicity surrounding the change. The publicity surrounding the enactment of FACTA emphasized the requirement of truncating the account number but ignored the additional requirement that the expiration date be removed from the receipt as well. Pub. L. No. 110-241§ 2(a)(3); Chaplin, Michael E., *What's So Fair About The Fair And Accurate Credit Transactions Act?,* 92 Marq. L. Rev. 307, 322–23 n.87 (2008) (hereinafter "*Chaplin*"). Also contributing to the misunderstanding of the provision is the fact that removing the expiration date did not seem likely to further the purpose of the law.

In any event, noncompliant businesses were deluged with lawsuits shortly after the effective date of the provision. Pub. L. No. 110-241 § 2(a)(4). Most, if not all, of the lawsuits were for including the expiration date, as well as the last 5 digits of the account number of the card, on the customer's receipt and sought only statutory damages, since no actual harm occurred. *Id.* § 2(a)(4) and (5). Most also were filed as putative class actions, which meant that they carried the potential to devastate the business sued since the damages claimed were typically greater than the merchant's net worth.[1] *Chaplin* at 311–12.

---

[1] *See D Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693, 698 (S.D. Fla. 2009) ("Here, Defendant is a local business with $40,000 in net assets. Yet, if Plaintiff prevails as a certified class representative, he would seek to impose a statutory damages award of between $4.6 million and $46

3

In response to the public outcry over the number and nature of the lawsuits being filed, Congress passed and the President signed on June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat 1565 (codified as amended in scattered sections of 15 U.S.C.). Among the purposes of the Clarification Act was "limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Pub. L. No. 110-241 § 2(b). Toward that end, the Clarification Act added subsection (d) to 15 U.S.C. § 1681n entitled "Clarification of willful noncompliance," which provided that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this section shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt." In other words, the Clarification Act simply immunized from suit merchants who were sued for including a credit card expiration date on a receipt prior to June 3, 2008. It did nothing to change the law going forward. It is in this legal context that the present suit arises.

---

million, while also conceding that neither he, or any other putative class member, suffered actual economic injury. . . . [T]o grant the requested class relief would allow this Plaintiff, and his counsel, to dangle the Sword of Damocles over Defendant, without any showing of actual economic harm."); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 280 (4th Cir. 2010) (Wilkinson, J., concurring specially) ("It staggers the imagination to believe that Congress intended to impose annihilating damages on an entire company and the people who work for it for lapses of a somewhat technical nature and in a case where not a single class member suffered actual harm due to identity theft."); *See also Chaplin* at 337 ("There is simply nothing in the requirements of the class action device that prevents courts from considering potential harm to the defendant. To the contrary, fundamental rules of fairness should motivate courts to do just that."); Sheila B. Scheuerman, *Due Process Forgotten: The Problem of Statutory Damages and Class Actions*, 74 Mo. L. Rev. 103, 104 (2009) ("When combined with the procedural device of the class action, aggregated statutory damages claims can result in absurd liability exposure in the hundreds of millions—or even billions—of dollars on behalf of a class whose actual damages are often nonexistent.").

4

On February 10, 2015—after the statutory deadline to comply with § 1681 c(g)(1)—Meyers alleges that he visited Nicolet Restaurant of De Pere located at 525 Reid St., De Pere, Wisconsin 54115 and received a computer-generated cash register receipt which displayed the last four digits of Plaintiff's credit card number as well as the card's expiration date. Plaintiff is seeking class certification for:

> all persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at the Nicolet Restaurant after June 3, 2008, which receipt displays the expiration date of the person's credit card or debit card.

(Pl.'s Mot. for Class Certification, ECF No. 3 at 1). Plaintiff alleges that over 100,000 credit or debit card transactions occurred during the relevant time period.

## ANALYSIS

The plaintiff bears the burden of showing that the class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). In order to meet his or her burden, the plaintiff must show that the putative class satisfied all four requirements of Federal Rule of Civil Procedure 23(a) and any one of the requirements of Rule 23(b). *Id.* Under Rule 23(a), a class may be certified "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These prerequisites are often called the requirements of "numerosity, commonality, typicality, and adequacy of representation." *Oshana*, 472 F.3d at 513. Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a)

5

is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Federal Rules of Civil Procedure provide the federal district courts with 'broad discretion' to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997) ("[W]e will reverse the grant or denial of class certification only for an abuse of discretion.").

**A. Rule 23(a) Requirements**

*1. Numerosity*

Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impracticable. Although there is no bright line test for numerosity, the Seventh Circuit has held that joinder of a class as small as forty people may be impracticable under Rule 23(a)(1). *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Although courts are able to make common-sense assumptions in determining numerosity, a mere conclusory allegation that joinder is impractical or speculation as to the size of the class is insufficient. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *McCabe*, 210 F.R.D. at 643.

Plaintiff alleges on information and belief that there are over 40 or 50 members of the class. Plaintiff bases this number on the fact that between August 26, 2012, the date in which Defendant opened under new ownership, through April 2015, when Defendant began complying with FACTA,

6

Defendant had 105,943 credit card transactions.[2] Plaintiff alleges that during this time Defendant was not in compliance with FACTA, meaning that all of Plaintiff's printed receipts impermissibly listed credit or debit card expiration dates. Out of these 100,000 plus transactions, Plaintiff argues, Defendant must have given at least 39 people (in addition to Plaintiff) copies of their receipts. Numerous district courts in this circuit have accepted similar rationales when certifying classes based on FACTA violations. *See Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *5 (N.D. Ill. Feb. 7, 2008); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014, at *2 (N.D. Ill. Dec. 4, 2007); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 214 (N.D. Ill. 2008); *Halperin v. Interpark Inc.*, 2007 WL 4219419, at *1 (N.D. Ill. Nov. 29, 2007).

However, unlike the defendants in most of the cases cited above, Defendant actually contests Plaintiff's allegation of numerosity. Specifically, Defendant contends that Plaintiff's estimates amount to unsupported speculation and are belied by the fact that Plaintiff has been unable to locate even one additional person who was provided a non-compliant receipt from Defendant. (Def.'s Resp. Br. 6, ECF No. 30.) In support of its argument, Defendant cites *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 667 (N.D. Ala. 2010). The plaintiff in *Grimes* argued that she had satisfied the numerosity requirement of Rule 23(a)(1) because given the number of overall transactions (millions) at the defendant's movie theaters during the times relevant to the complaint "it is reasonable to deduce that the number of class members is in the thousands." *Id.* at 668. The court disagreed, writing:

---

[2]In response to a subpoena served upon Defendant's credit and debit card processor Heartland Payment Systems, Plaintiff obtained Defendant's Merchant Statements for the relevant period. The Merchant Statement shows that Heartland processed 105,943 credit card transactions for Defendant's customers using Visa, MasterCard, Discover, or American Express during this period. (Pl.'s Reply Br. 5, ECF No. 37.)

7

> This court has nothing against Aristotelian powers of deduction, nor, for that matter, any objection to the use of common sense, but Grimes's leap of faith is based only on the fact that "[b]etween December 4, 2006, the effective date of [FACTA], and August 3, 2007, the date the complaint was served on Defendant, each of the 26 theaters sold somewhere between 755,000 and 5.5 million tickets." Rave probably hopes that it has repeat customers. The number of tickets sold does not prove which or how many customers received non-compliant receipts. Grimes has been unable to identify a single person, other than herself, who received a receipt at one of Rave's self-serve kiosks or point of sale terminals and who had more than the last 5 digits of his or her debit or credit card printed on it. To repeat the obvious, this class is unascertainable because neither Grimes nor Rave can provide a way to determine the number or identity of class members. Guess work is not a substitute for logic and common sense.

*Id.* (internal citations omitted). The court in *Grimes* went on to discuss the massive fines the defendant could be subject to and the potential constitutional confiscation issues that could arise if such fines were awarded. *Id.* Ultimately, the plaintiff's motion for class certification was denied. *Id*. at 670.

The *Grimes* case is distinguishable from the instant case for both factual and legal reasons. As a factual matter, the *Grimes* court really would have had a difficult time determining the number of people who could have potentially received non-compliant receipts. The defendant in *Grimes* owned a number of theaters, each with a number of machines which printed off receipts for customers. Only one of the machines at one of the theaters was known to be printing non-compliant receipts, rendering it nearly impossible for the court to estimate how many non-compliant receipts had been issued. *Id.* at 665. In contrast, Defendant only has one machine and that machine was printing exclusively non-compliant receipts during the relevant period, eliminating the uncertainty as to the percentage of receipts which were non-compliant.

More importantly, *Grimes* was a case in the Eleventh Circuit where Rule 23 is analyzed using a "heightened ascertainability" requirement. Under the heightened ascertainability requirement

8

plaintiffs are responsible for showing that the members of the class are readily identifiable: "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015); *see Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that rigorous analysis of class ascertainability applies to all Rule 23 requirements). A number of arguments have been set forth in support of this so-called "heightened ascertainability" requirement, including: administrative convenience, unfairness to absent class members, unfairness to bona fide class members, and the due process interests of the defendant. A heightened ascertainability requirement makes it much more difficult for plaintiffs to succeed in getting classes certified because plaintiffs must show that the court will be able to readily identify the class's members.

In contrast, the Seventh Circuit has made clear that ascertainability should not be considered in analyzing the Rule 23(a) factors, and should be carefully balanced when moving through the Rule 23(b)(3) factors. As the Seventh Circuit stated in *Mullins v. Direct Digital, LLC*:

> Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of skewing the balance that district courts must strike when deciding whether to certify classes. The policy concerns motivating the heightened ascertainability requirement are better addressed by applying carefully the explicit requirements of Rule 23(a) and especially (b)(3).

795 F.3d 654, 658 (7th Cir. 2015) *cert. denied*, 2016 WL 763259 (U.S. Feb. 29, 2016). The *Mullins* court had earlier discussed and rejected each of the arguments made in favor of a heightened ascertainability requirement, ultimately agreeing with Judge Rendell's concurring opinion in *Byrd v. Aaron's Inc.*, 784 F.3d 154, 172 (3d Cir. 2015) (Rendell, J., concurring), as amended (Apr. 28, 2015). The *Mullins* court concluded that "administrative inconvenience is better addressed by the explicit requirements of Rule 23(b)(3)" such as the likely difficulty in managing a class action.

9

*Mullins*, 795 F.3d at 663. "[C]reative solutions" can and should be used to overcome the administrative burdens of the class device. *Id.* at 672. With that in mind, the court directed district courts to account for ascertainability "by defining classes clearly and with objective criteria." *Id.* If a court could meet ascertainability in that way, and unless the class "presented unusually difficult manageability problems," then "courts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits." *Id.*

Given the Seventh Circuit's interpretation of Rule 23 in the *Mullins* case, Defendant's arguments regarding numerosity, commonality, and typicality must fail. To begin, any reliance on *Grimes* and similar out-of-circuit cases clearly has no bearing here. Additionally, Defendant's concerns about the difficulties of properly identifying members of the class must be left to a later stage of this litigation. *Id.* at 663 ("[Heightened ascertainability] also conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns."); *Id.* at 664 ("In addition, a district judge has discretion to (and we think normally should) wait and see how serious the problem [of identifying particular class members] may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation.").

Plaintiff estimates that, of the approximately 100,000 people who used their credit or debit cards at the defendant restaurant during the relevant period, at least 39 to 49 people (other than Meyers) were given copies of their receipts. Plaintiff's reasoning is sound, and I find either of these numbers sufficient to conclude that joinder is impracticable.

*2. Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A "common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Meyers argues that the common nucleus between him and the other class members is having been provided a credit or debit card receipt by Defendant which displays the expiration date of the person's credit card or debit card in violation of Section 1681c(g)(1). Because this issue would be identical across the class, Meyers' claim meets the commonality requirement.

*3. Typicality*

Pursuant to Rule 23(a)(3) a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Meyers' claim arises from the same alleged course of conduct as the claims of other class members—Defendant's distribution of noncompliant receipts. His claim is also based on the same legal theory as the claims of other members: that Defendant distributed those receipts in willful violation of FACTA. Therefore, Meyers has satisfied the typicality requirement.

*4. Adequacy*

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." In order to prove adequate representation the plaintiff must show: "(1) the representative does not have conflicting or antagonistic interests compared with the class

11

as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392–93 (N.D. Ill. 2006) (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986)). Defendant challenges Meyers' adequacy as a class representative, arguing that he doesn't understand his role, that he is not well informed about the case, that he searched out this case, and that he does not have a suitable character. (Def.'s Br. in Opp. 12–14, ECF No. 30).

Defendant overstates Meyers' shortcomings as a class representative. Though Meyers was not able to give particularly deft answers to defense counsel's questions regarding his role as class representative, his knowledge was sufficient to establish that he had reviewed the litigation documents and knew he needed to be in regular contact with his attorneys. Without understanding the legal intricacies of FACTA and class actions, Meyers also demonstrated an adequate grasp of the allegations as set forth in the complaint. Defendant's argument that Meyers lacks a factual understanding of the dispute also stands in contradiction to their contention that he sought out the suit—which would have required some basic knowledge of the law at issue. The challenges to Meyers' character seem mostly based on exaggerations or mischaracterizations of deposition testimony. Furthermore, Meyers does not appear to have any conflicting or antagonistic interests with the class as a whole. Therefore, I find that Meyers meets the adequacy requirement under Rule 23(a).

### B. Rule 23(b)(3) Requirements

Plaintiff seeks class certification under Rule 23(b)(3), which permits class certification where "the court finds that the questions of law or fact common to class members predominate over any

12

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In order to grant class certification pursuant to Rule 23(b)(3), this Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). The Seventh Circuit favors class actions in circumstances where individuals would otherwise be unlikely to bring small but possibly meritorious suits. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Although this circuit has stated in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006), that class certification is appropriate in suits under the FCRA, the Seventh Circuit has not addressed the impact of availability of attorneys' fees on the question of whether class certification is appropriate, especially where neither harm nor fraud is alleged.

*1. Predominance*

"Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). In order to satisfy the predominance requirement "the plaintiff must show that common issues not only exist, but outweigh the individual questions." *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 295 (N.D. Ill. 2008) (quoting *Troy*, 2007 WL 4293014, at *3).

Defendant argues that questions of law and fact common to the class do not predominate over questions affecting only individual members because nothing in Defendants' or any third parties' records will establish whether the proposed class members were "provided" a receipt. Therefore,

13

any benefits from the shared class questions will be dominated by the individual fact-finding required to determine which class members were actually provided a receipt. In support of this position Defendant cites a factually similar Louisiana case which held that individual inquiries under FACTA would overshadow common questions and defeat class efficiencies. *See Ticknor v. Rouse's Enterprises, LLC*, 2014 WL 1764738, at *8 (E.D. La. May 2, 2014) *aff'd sub nom.* 592 F. App'x 276 (5th Cir. 2014). The court in *Ticknor* stated:

> After adjudication of the class-wide issues concerning liability, to recover under FACTA each individual class member still must show he or she is a "consumer," a "cardholder," and received a receipt. Each of these issues is one of individual inquiry, and none may be resolved on a class-wide basis. Thus, any efficiency gained by deciding the common elements [of liability] will be lost when separate trials are required . . . to determine each member's entitlement to the requested relief.

2014 WL 1764738, at *8 (internal quotations omitted). I am persuaded by the reasoning of the *Ticknor* court and conclude that it applies to the present case.

The common question in this case is whether Defendant *willfully* provided the non-compliant receipts. The individual questions in this case are whether each individual defendant was actually *provided* with a receipt and when each person was provided a receipt (given that Defendant may only be liable for a certain time period). Whether Defendant willfully provided non-compliant receipts is a relatively simple question of law and fact. It is also a relatively simple question of law and fact whether individual customers were provided non-compliant receipts. However, given the potentially large number of plaintiff in this suit, I would expect that the vast majority of the time and effort yet to be expended in this case would entail determining whether individual plaintiffs were actually provided receipts. Assuming—as both parties do here—that the vast majority of people will not have kept their receipts from eating at Defendant's restaurant, Defendant would be entitled to

14

cross-examine each plaintiff and challenge their assertion that they opted to take a copy of the receipt. Furthermore, Plaintiff's reply brief does not explain why common issues predominate here and their brief-in-chief only vaguely reasserts their arguments from the commonality and typicality inquiries. At most, it would seem that individual and common questions would be of equal importance in the case. Therefore, I cannot say "the questions of law or fact common to class members predominate over any questions affecting only individual members."

*2. Superiority*

I also find that certifying the class here would be inappropriate because there are other methods to fairly and efficiently adjudicate the controversy here that are superior to a class action. Of the four factors listed in 23(b)(3) for determining whether a class action is superior, the first three do not weigh in favor or against class action treatment. Manageability, as noted above, weighs against certifying the class here because so much of this suit would be taken up by individual inquiry into whether potentially thousands of people were provided receipts. However, as noted in *Mullins*, "courts should not refuse to certify a class merely on the basis of manageability concerns." 795 F.3d at 663. Nevertheless, there are a number of other reasons to refuse to certify here.

To begin, the facts of this case are distinguishable from *Mullins* and other cases decided by the Seventh Circuit. Unlike in *Mullins* there is no concern that Defendant committed any fraud or even did anything wrong. The defendant in *Mullins* was accused of falsely labeling and identifying a joint relief supplement which was really just a sugar pill. *Id*. at 658. In this case, Defendant was—at most—reckless to the potential security of its customer's identities. No one is alleging that anyone was actually harmed by Defendant's action, nor is there any allegation that Defendant profited from it error. In fact, Meyers was aware from the beginning that Defendant's receipt was

15

noncompliant, so he could treat the receipt as a confidential document from the beginning and eliminate any concern of identity theft. Therefore, the concern of *Mullins* and other courts about "the fraud or other wrongdoing that will go unpunished if class treatment is denied" is not an issue here. *Id.*; *See Carnegie*, 376 F.3d at 661.

Another crucial distinguishing factor is the availability of attorney's fees here. 15 U.S.C. § 1681n(a)(3) provides that any person who fails to comply with the FCRA may be liable to consumers for statutory damages and "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." While it may be true that "only a lunatic or a fanatic sues for $30", *Carnegie*, 376 F.3d at 661, the availability of attorneys' fees and costs to a prevailing plaintiff changes the equation. Attorney's fees provisions such as this one provide strong incentive for attorneys to take even relatively small cases such as this one. As noted in *Ticknor*:

> [T]he remedies available for FACTA violations provide a sufficient incentive for individual suits. Willful violations of FACTA allow an individual to recover between $100 and $1000 as well as attorneys' fees, costs, and punitive damages. The possibility of recovering attorneys' fees removes a FACTA case from the negative value suit category.

2014 WL 1764738, at *10.[3] In addition to solving the negative value claim problem, other benefits of the class action device include bringing claims on behalf of people who would otherwise not know they have claims and deterring violations of federal law. But these goals are somewhat less important in this case, where Congress has specifically found that this type of FACTA violation does

---

[3]"Negative value claims" are claims "when the high cost of litigation outweighs the amount of recoverable damages." *Ticknor*, 2014 WL 1764738, at *10.

16

not expose the cardholder to an increased risk of identity theft. Again, I concur with the reasoning of the court in *Ticknor*, and find that individual suits are a superior option to a class action.

An additional factor that counsels against certifying this class is that a class action may not be required to solve the common questions of law and fact in this case. For example, if one plaintiff proves that Defendant was in willful violation of FACTA at a certain date, future plaintiffs may be saved the need to establish a willful violation by the doctrine of claim or issue preclusion. In the context of the Federal Truth in Lending Act (TILA) another district court has held:

> Denial of Rule 23(b)(3) class certification in this case does not mean that the parties and the judicial system must tolerate numerous, duplicative lawsuits, all designed to adjudicate the liability of Courtesy Motors, Inc. If groups of other purchasers are so inclined, they can bring their own lawsuits. Even in the absence of class certification, if plaintiffs prevail on their own TILA claims, that judgment would likely provide issue preclusion for subsequent TILA cases against defendant in either state or federal court. "In federal question actions, the [claim preclusion] doctrine not only bars a party from re-litigating previously decided issues against its former opponent, it also may be used 'offensively' to establish the claim of a plaintiff in a subsequent suit who was not a party to the prior action."

*Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 594 (W.D. Mich. 2001) (quoting *Trustees of the B.A.C. Local 32 Ins. Fund v. Silveri*, 78 F.Supp.2d 670, 681 (E.D. Mich.2000)); *see generally Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (discussing claim and issue preclusion). While a class action would likely be able to accomplish the same end as preclusion, the existence of preclusion doctrine mitigates the harm of potential repetitive litigation—a primary drawback of litigating these cases individually.

For all of these reasons, I conclude that Plaintiff has failed to carry his burden of showing that a class action is a superior method of adjudicating this case.

17

### D. Defendant's Motion to Compel Discovery

On December 31, 2015, Defendant filed a motion to compel discovery, requesting that this Court issue an order that Meyers must produce his computer, or in the alternative, allow the computer to be inspected by a competent expert. (ECF No. 32.) Even given the broad range discovery available under Federal Rule of Civil Procedure 26(b)(1), Defendant's request that Meyers produce his computer is not calculated to produce information relevant to Defendant's arguments or the proportional needs of the case. Assuming that Defendant found what they are looking for—information that Meyers learned of the full requirements of FACTA at a later time than Meyers stated in his deposition—Defendant's legal position would not change. The primary issue is this case is Defendant's compliance with FACTA and Defendant's knowledge of FACTA's requirements. Nothing on Meyers' computer could be relevant to these issues. Furthermore, Defendant's demand to have a third party search Plaintiff's personal computer for information that is not necessary to resolve the issues in this case is designed to harass Plaintiff and would also be inappropriate under Rule 26(b)(1).

### CONCLUSION

For the reasons stated above, Plaintiff's motion for class certification (ECF No. 3) is **DENIED**.

Additionally, Defendant's motion to compel discovery (ECF No. 32) is **DENIED**.

**SO ORDERED** this __1st__ day of April 2016.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court